UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LIDIA DUTCIUC, | ) Case No. EDCV 09-2177-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly determined that Plaintiff was capable of performing work as an office messenger, usher, and information clerk;

(2) Whether the ALJ properly considered Plaintiff's credibility;

(3) Whether the ALJ properly considered medical equivalency at step 3 of the sequential evaluation.

(JS at 2.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

## III.

## DISCUSSION

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairment of left arm amputation below the elbow and arthritis. (Administrative Record ("AR") at 10.) He also found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work with the following limitations: Plaintiff is able to lift and carry twenty pounds occasionally and ten pounds frequently with the upper-right extremity, she cannot use the non-dominant[3] upper extremity, and she can frequently, but not constantly, use the upper-right extremity for fine and gross manipulation. (Id. at 10-11.) Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing work as an office messenger, an usher, and an information clerk. (Id. at 16.)

**B.    The ALJ Properly Determined That Plaintiff Can Perform Alternative Work.**

In her first claim, Plaintiff argues that the ALJ improperly found that Plaintiff was capable of performing work as an office messenger, usher, and information clerk. (JS at 3-6, 11.) Specifically, Plaintiff claims that she is unable to exert "a negligible amount of force constantly," as is required for the office messenger and usher jobs. She also argues that she would be unable to perform the job of information clerk, as that job "is more likely than not" performed in the current economy.[4]

---

[3] The ALJ characterized Plaintiff's upper-left extremity as "non-dominant." (AR at 10.) However, in her March 23, 2007, Function Report, Plaintiff stated that prior to her amputation she was left handed. (Id. at 113.)

[4] Plaintiff does not challenge the ALJ's RFC assessment, but rather only challenges the ALJ's conclusions as to Plaintiff's ability to perform the jobs at

(continued...)

In finding that Plaintiff maintained the RFC to perform a limited range of light work, the ALJ concluded that Plaintiff could "frequently - but not constantly - use the right upper extremity for fine and gross manipulation." (AR at 11.) Plaintiff claims that such a restriction is contrary to the Dictionary of Occupational Title's ("DOT") definition of "light work," which includes the jobs of office messenger and usher, because the DOT defines light work as requiring the exertion of "a negligible amount of force constantly to move objects." (JS at 4.)

Preliminarily, Plaintiff's argument is misleading, as the ALJ's RFC limiting Plaintiff to frequent fine and gross manipulation is not the same as the DOT description for light work regarding exerting a negligible amount of force to move objects. Moreover, as explained by Defendant, the DOT definition of light work does not necessarily require a constant exertion of a negligible amount of force. Rather, the DOT defines light work as requiring "[e]xerting up to 20 pounds of force occasionally, **and/or** up to 10 pounds of force frequently, **and/or** a negligible amount of force constantly . . . to move objects." DOT (4th Ed. 1991), App. C (emphasis added). The ALJ found Plaintiff capable of performing only a limited range of light work, lifting and carrying twenty pounds occasionally and ten pounds frequently, a finding consistent with the DOT definition of light work.

Moreover, it is apparent from the expert testimony at Plaintiff's hearing that the specific jobs at issue were not the type of light work that demanded physical requirements beyond Plaintiff's RFC. The VE specifically considered Plaintiff's limitations as found by the ALJ and concluded that Plaintiff would be capable of performing the jobs of office messenger and usher as they are performed in the national economy. The VE further testified that his opinion was not inconsistent with the DOT. (AR at 37-39.)

Plaintiff's alternative arguments for why she is unable to perform the jobs at

---

[4](...continued)
issue in light of that RFC.

issue also fail. There is no evidence in the record to support Plaintiff's complaint that performance of the job of office messenger would "exacerbate" her right arm impairments. Even if there was such evidence, this argument does not establish that Plaintiff is physically unable to perform job tasks at this time, but rather urges a finding of disability based on the potential for exacerbation of her symptoms at some time in the future. This is not the standard for a finding of disability.

Similarly, Plaintiff's arguments that it would be "impractical" for her to perform the job of usher based on tasks presumably required by that job, such as handing out programs or changing advertising displays, is faulty. The VE considered Plaintiff's impairments and concluded that she could perform the job of usher as it is performed in the national economy. In fact, the VE supplied the ALJ with an "eroded" number of usher positions in the economy that Plaintiff would be capable of performing, indicating that the VE considered only the positions that Plaintiff could perform in light of her specific physical impairments. (Id. at 38.) Plaintiff has not shown the VE's testimony to be unreliable. See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (ALJ properly relied on VE testimony that a one-armed claimant could perform job as a ticket taker where claimant's argument on appeal "reduce[d] to a factual disagreement about whether a person with one arm" could perform the job at issue).

Finally, Plaintiff argues that she cannot perform the job of information clerk as that job "is more likely than not" performed. Again, Plaintiff relies on presumptions of what the job requires, including having to enter information into a computer system as part of her record-keeping duties, which she claims would be "problematic" because she has limited use of her lower-right extremity due to wrist pain and multiple erosions in the carpal tunnel bones. (JS at 4-5.) However, the VE gave expert testimony that Plaintiff would be capable of performing this job as it is performed in the national economy. Plaintiff's unsupported presumptions are insufficient to call into doubt the testimony of the VE. See

Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988) ("Questions of credibility and resolutions of conflicts in the [VE's] testimony are addressed to the ALJ."); see also Carey, 230 F.3d at 146.

Based on the foregoing, the Court finds that the ALJ properly determined that Plaintiff can perform alternative work. Thus, there was no error.

**C.      The ALJ Failed to Properly Considered Plaintiff's Credibility.**

Next, Plaintiff contends that the ALJ improperly rejected her subjective complaints of impairment. (JS at 12-15, 18.)

In his decision, the ALJ rejected Plaintiff's credibility as follows:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(AR at 12.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes

specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284. The Social Security Rulings ("SSR") further provide that an individual may be less credible for failing to follow prescribed treatment without cause. SSR 96-7p.

Here, it appears the ALJ gave no reasons for rejecting Plaintiff's credibility. To the extent that the ALJ intended to rely on his discussion of the medical record as support for his credibility determination (see AR at 12-14), his analysis was not specific and did not provide clear reasons for rejecting Plaintiff's credibility. The fact that the Court cannot determine whether the ALJ's discussion of the medical record was intended to lend support for his credibility determination is proof that the ALJ was not "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (citations and internal quotation marks omitted). Thus, the Court finds that the ALJ's credibility determination was error, and this action must be remanded to allow the ALJ to properly consider Plaintiff's subjective

complaints of impairment.

**D.    Consideration of Medical Equivalence.**

Finally, Plaintiff contends that the ALJ failed to properly consider whether Plaintiff's impairments met or medically equaled a listed impairment. Specifically, Plaintiff argues that the ALJ erred in finding that Plaintiff's impairments did not medically equal Listing 1.02 in light of her right wrist arthritis. (JS at 19-21, 23-24.)

In his decision, the ALJ concluded that Plaintiff's impairments "do not meet or equal any of the 1.00 (musculoskeletal system) series of impairments." (AR at 10.)

If the ALJ concludes at step two of the sequential evaluation that the plaintiff's impairments are "severe" within the meaning of the Act, the ALJ proceeds at step three of the sequential evaluation to compare the plaintiff's impairments to the impairments listed in the "Listing of Impairments" set forth in 20 C.F.R. pt. 404, subpt. P, App.1. See 20 C.F.R. § 416.925. If any "severe" impairment, or combination of "severe" impairments, meets or equals a listed impairment, the plaintiff is deemed disabled. Id.

The plaintiff's impairment need not precisely meet the criteria of the listing in order to obtain benefits. If the plaintiff's impairment or combination of impairments is medically equivalent to one in the listing, disability is presumed, and benefits are awarded. 20 C.F.R. § 404.1520(d); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989). Medical equivalence will be found if the medical findings are at least equal in severity and duration to the listed findings. Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990). To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 416.929, 416.928. The decision is based solely on the medical evidence, which must be supported by medically acceptable

clinical and laboratory diagnostic techniques. Id.

As relevant here, Listing 1.02 requires the "involvement of one major peripheral joint in each upper extremity (i.e. shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. pt. 404, subpt. P., App. 1, § 1.02. In turn, section 1.00(B)(2)(c) defines the "inability to perform fine and gross movements effectively" as:

> [A]n extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. pt. 404, subpt. P, App.1, § 1.00(B)(2)(c).

It is clear from the record that Plaintiff has arthritis in her right wrist, accompanied by pain, swelling, numbness, decreased grip strength, and positive findings on MRI. (AR at 152, 160, 188, 237, 243.) Plaintiff acknowledged during her consultative psychiatric evaluation that she can "do household chores," "bathe and shower," "make easy food," and drive. (Id. at 165.) However, Plaintiff claimed in her March 23, 2007, Function Report that she sometimes needs help dressing, needs help washing her hair, needs help in unspecified personal care, only does laundry with the assistance of her husband, and can only lift up to fifteen pounds. (Id. at 108-15.) In addition, at the hearing before the ALJ,

Plaintiff testified that it is "really hard" for her to lift a carton of milk, (id. at 25), that she drives for seven minutes to pick up her children from school but that she needs a special knob on her steering wheel, (id. at 27, 32), her hand goes numb "for some time," (id. at 29), it's "really hard" to move her fingers enough to work on a computer, (id. at 30), and that she could use her hand for fingering and fine manipulation for thirty minutes before it starts to hurt (id. at 30).

It is impossible to assess whether Plaintiff meets or equals Listing 1.02 in light of her subjective complaints without an adequate analysis of Plaintiff's credibility. Accordingly, on remand, the ALJ shall reconsider whether Plaintiff meets or equals a listed impairment in light of his decision regarding Plaintiff's credibility.[5] Depending on the ALJ's revised analysis of Plaintiff's credibility, he may also have to reconsider whether Plaintiff is capable of performing alternative work.

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: October 4, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge

---

[5] The Court expresses no view on the veracity of Plaintiff's subjective complaints or whether they are sufficient for a finding that her impairments meet Listing 1.02.